UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SCOOTER LYNN ROBINSON                                                    PLAINTIFF

VERSUS                                     CIVIL ACTION NO. 3:15CV263-TSL-RHW

WARDEN NORRIS HOGANS                                                   DEFENDANTS

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Plaintiff Scooter Lynn Robinson, proceeding *pro se* and *in forma pauperis*, filed a prisoner civil rights complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while incarcerated at East Mississippi Correctional Facility (EMCF). Doc. [1]. Plaintiff later amended his complaint. Doc. [14]. The undersigned conducted a screening hearing on December 5, 2016. *See* Minute Entry (12/5/2016); Doc. [115-1]. Near the conclusion of the screening hearing, Plaintiff indicated that the "main points" of his lawsuit are the RVR he received without due process, his personal property and paperwork that went missing, and the denial of his requests for transfer to a different facility. Doc. [115-1] at 28-29.

On June 17, 2014, Plaintiff got into a fight with another inmate in the law library at EMCF. Captain Matthew Naidow broke up the fight. Following the altercation, Plaintiff was returned to his unit. Shortly thereafter, Lt. Joshua Roberts delivered a rule violation report (RVR) to Plaintiff based on his assault of inmate Austin McKennsey. Roberts reviewed the RVR with Plaintiff at his cell door. Roberts then took Plaintiff to administrative segregation. Plaintiff testified that he remained in administrative segregation for 15 days before being returned to his normal housing unit. Plaintiff denies that he ever received a disciplinary hearing.

According to the RVR records, Disciplinary Investigator Rosemary Cotton attempted to interview Plaintiff regarding the incident, but Plaintiff told her he would make a statement at his

disciplinary hearing. Doc. [115-3] at 3. Lt. Jones conducted the disciplinary hearing on June 26, 2014, but Plaintiff refused to participate. *Id.* at 1. Sgt. Cotton witnessed Plaintiff's refusal. *Id.* Lt. Jones found Plaintiff guilty of the RVR based on review of security camera footage and staff witness statements. *Id.* She imposed reclassification as punishment. *Id.* Plaintiff alleges that Lt. Jones and Sgt. Cotton failed to conduct a proper investigation and disciplinary hearing on the charges against him, thereby violating his due process rights. He also claims that his classification status was changed from B custody to C custody because of the RVR conviction. Plaintiff further claims that on July 22, 2014, Captain Christopher Dykes and Sgt. Rosalyn Delaine denied him access to the law library because of the prior altercation at the law library. Plaintiff generally alleges that he did not receive proper assistance from the law library staff. Plaintiff testified that he was working on post-conviction relief efforts at the time he was denied access and assistance. However, Plaintiff testified that ILAP staff eventually came to Plaintiff's housing unit to provide services, and he was able to file his post-conviction pleadings. The ILAP records indicate that Plaintiff received ILAP and legal mail services on a frequent basis during the relevant time period.

On November 5, 2014, Plaintiff got into a fight with several inmates in his housing unit, which resulted in severe injuries and treatment at a local hospital. The fight began because Plaintiff complained about getting sick from food passed out by inmates on his zone. During the fight, Plaintiff was stabbed repeatedly. He was taken to a hospital for treatment and also spent time in the medical unit after returning from the hospital. When Plaintiff returned to EMCF from the hospital on November 12, 2014, he discovered that his personal property, including legal paperwork, was missing. Plaintiff spoke with several of the named Defendants about the

missing property. He claims that the Defendants failed to secure his property after he was taken to the hospital and later failed to properly investigate the disappearance of his property.

On December 5, 2914, Plaintiff was transferred to Central Mississippi Correctional Facility (CMCF). He claims that before being transferred, a case manager and classification asked him if he wanted "red tags" for anyone as a result of the November 5, 2014 incident. Plaintiff alleges he did not know the identity of the inmates who assaulted him because Defendants failed to conduct an adequate investigation. The record reveals that Defendant Ricks conducted an investigation of the incident, obtained statements, and completed a report. *See* Doc. [115-7]. In the report, Ricks identified Plaintiff, Don Williams, Michael Corder, Harold Jones, and Kendarius Fortenberry as the individuals involved in the November 5, 2014, incident. *Id.*

Plaintiff testified that he sued Deputy Warden Hogans and Psychologist Amy Hodgson because they never answered his requests to be transferred to another facility. Plaintiff also claims that Administrative Remedy Program Coordinator Mary Dempsey failed to properly assess his administrative grievances regarding the investigation of the November 5, 2014, altercation and his missing personal property.

Pending before the Court is Defendant Vernell Thomas' motion for summary judgment. Doc. [100]. Defendants Anderson, Bender, Birdtail, Braxton, Cotton, Dempsey, Dukes, Dykes, Hodgson, Hogans, Jones, Jaidow, Rice, Ricks, Roberts, and Steele have filed a joint motion for summary judgment. Doc. [115]. Plaintiff also has filed two motions for summary judgment. Doc. [114] & [119]. Liberally construed, Plaintiff's pleadings raise the following claims: (1) Defendants violated Plaintiff's due process rights because they failed to conduct a disciplinary hearing stemming from the June 17, 2014, RVR; (2) Defendants failed to properly investigate the

3

November 5, 2014, altercation; (3) Defendants failed to secure Plaintiff's personal property while he was in the hospital and medical unit; (4) Defendants failed to properly investigate the disappearance of Plaintiff's personal property; (5) Plaintiff was denied of access to legal services and the law library; (6) Defendants failed to transfer Plaintiff to a different facility; and (7) Defendants did not handle Plaintiff's administrative grievances properly.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the

movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."
*John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**June 17, 2014, Law Library Altercation**

Plaintiff alleges that Defendants violated his due process rights in the course of investigating and conducting a disciplinary hearing related to the November 5, 2014, altercation at the law library. He complains that he received 15 days of administrative segregation without a disciplinary hearing. Plaintiff further alleges that the RVR conviction resulted in a change of his custody classification from B custody to C custody.

Plaintiff testified that someone named "Rogers" brought the RVR to his cell right after the incident but Plaintiff was not allowed to sign it. Instead, Rogers read the RVR to Plaintiff from the other side of the door. Plaintiff was then moved to "lockdown". Defendants' summary judgment evidence tells a slightly different story but corroborates Plaintiff's account in some key aspects. The RVR indicates that on June 17, 2014, Plaintiff assaulted another inmate by punching him with his right fist in the face. Defendant Braxton called a "code black". Defendant Naidow responded and broke up the altercation. Defendant Roberts reviewed the RVR in front of Plaintiff's door, but he "refused to sign". The documents attached to the RVR indicate that Defendant Cotton conducted an investigation on June 19, 2014, at which time Plaintiff refused to make a statement. On June 26, 2014, Defendant Jones conducted a disciplinary hearing. Defendant Jones found Plaintiff guilty based on "camera and staff witnessed".

5

Plaintiff's allegations relating to the June 17, 2014, incident, RVR, and subsequent punishment fail to state a constitutional claim. Inmates who are charged with institutional rule violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id.* at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir.1995). For example, a prisoner's loss of good-time credits as a result of punishment for a disciplinary conviction, which increases his sentence beyond the time that would otherwise have resulted from state law providing mandatory sentence reductions for good behavior, must be accompanied by certain procedural safeguards in order to satisfy due process. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Due process also requires that "some evidence" in the record supports the disciplinary action. *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005).

Plaintiff admits that he received notice of the charges against him in that Defendant Roberts brought the RVR to Plaintiff's unit and read it to Plaintiff shortly after the incident. Plaintiff denies that he ever received a disciplinary hearing. However, even accepting as true the premise that Plaintiff did not receive a formal disciplinary hearing, Defendants' undisputed summary judgment evidence indicates that EMCF officials conducted an investigation, sought a statement from Plaintiff, reviewed video evidence and relied on witness statements prior to finding Plaintiff guilty. As a result of the incident, Plaintiff alleges he spent 15 days in administrative segregation.

Administrative segregation, being an incident of the ordinary life of a prisoner, will never be a ground for a constitutional claim absent exigent circumstances. *Harper v. Showers*, 174

F.3d 716, 719 (5th Cir.1999). Plaintiff has not alleged any exigent circumstances. As such, Plaintiff does not allege any due process or other constitutional violation arising from his classification. *See Sandin*, 515 U.S. at 485; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). In *Sandin*, the plaintiff was placed in disciplinary segregation for 30 days as punishment for violating prison disciplinary rules. *Id.* at 486. Specifically, the plaintiff directed angry and foul language at a prison guard during a strip search. The Court held that the plaintiff's confinement in disciplinary segregation for 30 days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. In interpreting *Sandin*, the Fifth Circuit in dicta stated that "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status." *Orellana*, 65 F.3d at 31 (5th Cir. 1995).

Plaintiff has not alleged that the duration of his confinement was affected, only that he was placed in administrative segregation. In fact, Plaintiff is serving a life sentence, so it is unlikely the punishment resulting from the RVR could have affected the duration of his confinement. Consequently, Plaintiff has failed to state a constitutional claim. Likewise, Plaintiff's change in custodial classification from B custody to C custody fails to state a constitutional claim, because an inmate does not have a constitutionally based liberty interest in his custodial classification. *Harper*, 174 F.3d at 719; *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Finally, Plaintiff does not dispute whether some evidence supported the disciplinary action against him. To the contrary, Plaintiff admits in his complaint that he got into a fight with another inmate, which lead to the RVR at issue. Moreover, the record reveals that he was found guilty based on eyewitness accounts and video review. Based on the foregoing, the undersigned

7

finds that summary judgment should be granted with respect to Plaintiff's claims arising out of the June 17, 2014, law library incident.

**Access to Law Library and Courts**

Plaintiff alleges that following the June 17, 2014, altercation at the law library, he was denied access to the courts. Specifically, he alleges that on July 22, 2014, he was denied access to the law library. He further suggests that this denial of access affected work on his post-conviction pleadings.

Prisoners have a constitutional right to meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998). This constitutional guarantee does not afford prisoners unlimited access to prison law libraries. *Id.* Before a prisoner may prevail on a claim that his constitutional right of access to the court was violated, he must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts. *Id.* at 230-31.

Although Plaintiff may have been denied permission to go to the law library on one occasion, he testified that ILAP staff later came to his housing unit to provide legal research services. Doc. [115-1] at 16. The ILAP records corroborate this testimony by showing that he received ILAP and legal mail services on a frequent basis during the time period in question. Doc. [115-6]. Moreover, Plaintiff cannot demonstrate prejudice, because he testified that he was able to file his various post-conviction pleadings. Doc. [115-1] at 14-18.

**November 5, 2014, Food Incident**

Plaintiff alleges that on November 5, 2014, he complained that he got sick from food being passed out by inmates on his zone. Plaintiff's complaints resulted in a fight with other inmates and injuries to Plaintiff. Plaintiff was taken to the hospital and later spent time in the

8

medical unit recovering from injuries. Plaintiff alleges that he filed numerous grievances about the incident but prison officials failed to adequately investigate the matter.

Plaintiff possesses no constitutional right to a grievance procedure and no due process liberty interest right to have his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005). Moreover, to the extent that Plaintiff alleges that any of the defendants failed to investigate his grievance adequately, such an allegation does not constitute a claim under § 1983. *Id.* at 374. Regardless, the undisputed summary judgment evidence indicates Defendant Ricks conducted an investigation of the incident, obtained statements, and completed a report. Doc. [115-7]. In the report, Lt. Ricks identified Plaintiff, Don Williams, Michael Corder, Harold Jones, and Kendarius Fortenberry as the individuals involved in the November 5, 2014, incident. *Id.*

**Lost Property**

Plaintiff alleges that prison officials are responsible for the loss of his personal property following the November 5, 2014, incident. He asserts that prison officials should have secured his property while he was absent from the unit. He further asserts that prison officials later failed to investigate the loss of his property.

The Due Process clause is not implicated by a state official's negligent act causing unintended loss of property. *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). Likewise, intentional deprivations of property by state employees do not implicate the due process clause as long as there is an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Murphy v. Collins*, 38 F.3d 541, 543-44 (5th Cir. 1994). The State of Mississippi has an adequate post-deprivation remedy--namely, filing a lawsuit for conversion in state court. *Nickens v. Melton*, 38 F.3d 183 (5th Cir. 1994). Hence, Plaintiff's claim for

deprivation of personal property, whether by negligence or intentional act, does not rise to the level of a constitutional claim. Plaintiff's contention that prison officials should have done a more thorough investigation of his property loss claim also fails to state a constitutional claim. *See Geiger*, 404 F.3d at 374.

**Facility Transfer**

Plaintiff alleges that Defendants should have transferred him to another facility. Inmates possess no constitutional right to be housed in a facility of their choosing. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). Hence, Plaintiff's claim is without merit.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendants' [100] [115] Motions for Summary Judgment be GRANTED and that Plaintiff's [114] [119] Motions for Summary Judgment be DENIED. The Court further recommends that Plaintiff's 42 U.S.C. § 1983 civil rights complaint be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed

findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 13th day of November, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE